[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Statement of the Case
CT Page 9617
The plaintiffs, Frank and Claire Cirullo, appeal the January 31, 1995 decisions of the defendant, the Old Lyme (Town) Zoning Board of Appeals (ZBA): (1) to deny the plaintiffs' appeal, thereby affirming the Town's Zoning Enforcement Officer's (ZEO) refusal to issue a certificate of zoning compliance so that a building permit could issue to change the gable dormer on the second floor of the plaintiffs' house to a shed dormer (Count One); and (2) to deny the plaintiffs' application for a variance from the Town's zoning regulations so that the plaintiffs could change the dormer style (Count Two).[1]
The ZEO denied the plaintiffs' application for a certificate of zoning compliance based on a "site inspection 12/16/94; garage not shown on survey; does not comply Sec. 8.8.1: enlargement/extension non-conforming structure not in conformance w/street setback 21.3.7; enlargement/extension bldg. on non-conforming lot (Sec. 21.3.1; 21.3.2; 21.3.3; 21.3.11)." (Return of Record [ROR], Item I(a): Zoning Compliance Application.) The ZBA upheld the ZEO's adverse decision, implicitly finding that the plaintiffs proposed an unlawful enlargement of a nonconforming use, in violation of § 8.8.1 (enlargement of a nonconforming use) and §§ 21.3.7, 21.3.1, 21.3.2 and 21.3.3 (lot size and front yard setback requirements) of the Town's zoning regulations. (ROR, Item I(w): ZBA Special Meeting Minutes.)
Procedural History
The plaintiffs commenced this appeal on February 16, 1995, when service was made on June Spiers, chairperson of the ZBA, and on the Town Clerk. (Sheriff's Return.) The appeal was filed with the clerk of the superior court on February 24, 1995. The defendant filed its answer and the return of record on June 1, 1995. The plaintiffs filed their brief on August 3, 1995 and the defendant filed its brief on August 30, 1995. The court, Hurley, J., heard the appeal on August 9, 1996.
Facts
The plaintiffs allege that they own property located at 8 Massachusetts Road in Old Lyme, Connecticut. (Complaint, Count One, par. 1; Plaintiffs' Exhibit 1: Deed.) On December 22, 1994, the plaintiffs applied to the ZEO for a certificate of zoning compliance, which would allow them to obtain a building permit to change a gable dormer on their home to a shed dormer. The CT Page 9618 plaintiffs sought to change the dormer to increase the ceiling height in a portion of a second floor room. (ROR, Item I(a).) The ZEO subsequently denied the plaintiffs' application for a certificate of zoning compliance.
On December 22, 1994, the plaintiffs appealed the ZEO's adverse decision to the ZBA. (ROR, Item I(b): Appeal from Ruling of Zoning Enforcement Official.) In conjunction with appealing the ZEO's adverse decision, the plaintiffs applied for a variance from the Town's zoning regulations. (ROR, Item I(b).) On January 17, 1995, public hearings were held on the plaintiffs' appeal and their variance application. (ROR, Item I(e); Item II(d).) Notice of the public hearings was published in the local newspaper. (ROR, Item I(d): Legal Notice.) On January 31, 1995, the defendant held an open voting session, which resulted in denial of the plaintiffs' appeal and application for a variance. (ROR, Item I(w): Minutes of Special Meeting; Item II(n): Minutes.) Both decisions were published in the local newspaper on February 7, 1995. (ROR, Item I(y); Item II(q).)
By letter dated February 7, 1995, the defendant advised the plaintiffs that it voted unanimously to deny the plaintiffs' appeal, thereby upholding the ZEO's decision to deny the certificate for zoning compliance, but reasons for the decision were not given. (ROR, Item I(z).) The letter, however, enumerated the following reasons for denying the plaintiffs' application for a variance from the zoning regulations: (1) a hardship necessitating the variance was not shown; (2) the home is in an overcrowded area of small lots built prior to the adoption of the zoning regulations; (3) the present application did not represent a substantial change from two previous applications for a variance, which were also denied by the ZBA; (4) lot coverage is over the allowed amount; and (5) it appears that the plaintiffs want to convert an eave area to a bedroom and bath, which would be an extension and expansion of a nonconforming building on a nonconforming lot, not in accordance with the Town's plan of zoning. (ROR, Item I(z); Item II(r).)
This appeal raises two issues: (1) whether the ZBA acted illegally, arbitrarily, capriciously and in abuse of its discretion by denying the plaintiffs' appeal, affirming the ZEO's determination that the proposed dormer renovation on the second floor of the plaintiffs' house constitutes a prohibited enlargement of a nonconforming use; and (2) whether the defendant acted illegally, arbitrarily and in abuse of its discretion when CT Page 9619 it denied the plaintiffs' application for a variance to the Town's zoning regulations.
Jurisdiction
A. Aggrievement
Pleading and proof of aggrievement is a prerequisite to the trial court's jurisdiction over the subject matter of a plaintiff's appeal from an administrative agency's decision.Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192,___ A.2d ___ (1996). In the present case, the plaintiffs allege aggrievement, claiming that they are applicants and owners of property that is the subject of the defendant's adverse decision. (Complaint, Count One, par. 8.) The court, Hurley, J., found that the plaintiffs are the owners of the property, based on a certified copy of a warranty deed from John C. Lewis, II to Frank J. and Claire F. Cirullo. As the owners of the property that is the subject of the defendant agency's decision, the plaintiffs are aggrieved and entitled to bring this appeal. See, e.g.,Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991); Bossert Corp. v. Norwalk.,157 Conn. 279, 285, 253 A.2d 39 (1968).
B. Timeliness and Service of Process
The plaintiffs served process on the chairperson of the ZBA and on the Town Clerk on February 16, 1995, which is less than fifteen days after notice of the ZBA's decisions was published in the local newspaper on February 7, 1995. This appeal is therefore timely and the proper parties were served, pursuant to General Statutes § 8-8 (b), (e).
C. Exhaustion of Administrative Remedies
Where an adequate administrative remedy exists, it should be exhausted. Simko v. Ervin, 234 Conn. 498, 503, 661 A.2d 1018
(1995). "This requirement reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment." (Internal quotation marks omitted.) O G Industries, Inc. v.Planning Zoning Commission, 232 Conn. 419, 425, 655 A.2d 1121
(1995). The plaintiffs, by appealing the ZEO's adverse decision CT Page 9620 to the ZBA, exhausted their administrative remedies and, thus, the court has jurisdiction to hear this appeal. See General Statutes §§ 8-6, 8-7, Town of Old Lyme Zoning Regulations, § 52.1;[2] Bosley v. Zoning Board of Appeals, 30 Conn. App. 797,800, 622 A.2d 1020 (1993).
D. Citation
The court has jurisdiction to hear this appeal because the plaintiffs used proper citation. (Sheriff's Return.) In administrative appeals, the citation is analogous to the writ used to commence a civil action and directs a proper officer to summon the agency whose decision is being appealed. Sheehan v.Zoning Commission, 173 Conn. 408, 413, 378 A.2d 519 (1977).
Scope/Standard of Judicial Review
"Zoning boards of appeal are entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application." Bell v.Zoning Board of Appeals, 27 Conn. App. 41, 45, 604 A.2d 379
(1992), citing Connecticut Sand Stone Corp. v. Zoning Board ofAppeals, 150 Conn. 439, 442, 190 A.2d 594 (1963). "In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is a factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted.) Francini v. Zoning Board ofAppeals, 228 Conn. 785, 791, 629 A.2d 519 (1994). "The question is not whether the trial court would have reached the same conclusion but whether the record supports the decision reached."Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,455 A.2d 339 (1983).
When a party appeals the action of a ZEO to a ZBA, the ZBA reviews the ZEO's decision "pursuant to General Statutes §§8-6 through 8-7 (b)." Caserta v. Zoning Board of Appeals, 226 Conn. 80,87, 626 A.2d 744 (1993). The Caserta court held that "it is clear from both the entire statutory scheme and [Connecticut] zoning case law that the zoning board hears and decides such an CT Page 9621 `appeal' de novo, and that the action of the zoning enforcement officer that is the subject of the appeal is entitled to no special deference by the court." Id., 88-89. "It follows from the de novo nature of the board's consideration of the issues decided by the zoning enforcement officer that the trial court, upon a judicial appeal from the board pursuant to General Statutes §8-8 must focus on the decision of the board and the record before it, because that is the decision and record that are the subject of the appeal under § 8-8." Id., 90-91. The court must review the findings of the ZBA to see whether those findings are supported by substantial evidence. Zachs v. Zoning Board ofAppeals, 218 Conn. 324, 329-30, 589 A.2d 351 (1991). The plaintiff has the burden of proving that the board acted improperly. Adolphson v. ZBA, 205 Conn. 703, 707, 535 A.2d 799
(1988).
Discussion
The first issue to be decided in this appeal is whether the ZBA acted illegally, arbitrarily and in abuse of its discretion in denying the plaintiffs' appeal, upholding the ZEO's determination that the proposed dormer renovation on the second floor of the plaintiffs' house constitutes a prohibited enlargement of a nonconforming use, pursuant to the Town's applicable zoning regulations. Since the defendant failed to give any reason for the denial of the plaintiffs' appeal and implicit affirmance of the ZEO's adverse decision; (ROR, Item I(z)); the "action is not deemed void but the court must search the record to see whether the [ZBA] was justified in its decision." WestHartford Interfaith Coalition, Inc. v. Town Council, 228 Conn. 498,515, 634 A.2d 1342 (1994). The court can also consider whether the ZBA made implicit findings in upholding the ZEO's decision. Zachs v. Zoning Board of Appeals, supra, 218 Conn. 329-31.
The following facts from the record are pertinent. The plaintiffs proposed to change the dormer on their house from a gable dormer to a shed dormer to extend a front wall, the ceiling height of which is currently four feet, to attain a ceiling height of approximately eight feet. (ROR, Item I(e): Record of January 17, 1995 Public Hearing, pp. 3-4.) The area they propose to renovate encroaches one point five feet into the twenty-five foot front yard setback. (ROR, Item I(e) p. 3.) Seeking to change the contour of the roof line to avoid hitting his head on the ceiling when he walks to the front of the second floor room, the plaintiff applied to the ZEO for a certificate of zoning CT Page 9622 compliance so that a building permit could issue, allowing the plaintiff to make the proposed change to the dormer. (ROR, Item I(e) p. 3.) The plaintiffs concede that the proposed change will result in a vertical, versus a horizontal, extension of the relevant portion of the second floor room in their home. (ROR, Item I(e), pp. 3-4.)
At the public hearing, the ZEO clarified her reasons for denying the plaintiffs' application, stating that (1) although the plaintiffs' application proposed to increase ceiling height, versus floor area, the existing dormer did not meet the zoning regulations proscribing height limitations and setback, nor would the proposed construction bring the building into compliance with the relevant regulations; and (2) increasing the area of a building or structure located on a nonconforming lot violates the relevant zoning regulations. (ROR, Item I(e), pp. 7-8.) When the ZEO denied their application, the plaintiffs appealed to the ZBA. (ROR, Item I(b).)
The ZBA denied the plaintiffs' appeal, finding that the Town's regulation of nonconforming uses applied to vertical, as well as horizontal, extension of the use and that the plaintiffs would be expanding their living floor space, within the definition provided in the zoning regulations.[3] (ROR, Count One, Item I(w).) It appears, therefore, that the defendant's denial of the plaintiffs' appeal is implicitly grounded in its finding that the ZEO acted properly by not issuing a certificate of zoning compliance to the plaintiff because the proposed construction was a prohibited "enlargement" under the Town's zoning regulations. See Zachs v. Zoning Board of Appeals, supra,218 Conn. 329-31.
The plaintiffs' house is situated in an R-10 zone on a lot that is nonconforming as to area because the lot is too small. (ROR, Items I(g): Plot Plan of 8 Massachusetts Rd.; I(t): William Kent January 12, 1995 Letter re: Survey of Lot; I(w) p. 2.)[4]
The house itself is nonconforming because one and one-half feet of existing second floor living area, as well as the foundation of the house, encroaches into the twenty-five foot setback from the road, in violation of § 21.3 of the Town's zoning regulations. (ROR, Items I(g), I(t).) The setback encroachment is a condition that existed prior to the Town adopting its zoning regulations. (ROR, Item I(e) pp. 8-9.)
The plaintiffs claim that changing the dormer will bring the CT Page 9623 house into compliance with the applicable building code that requires a ceiling height of 7.6 feet in any habitable room. (ROR, Item I(u): 1992 Accumulative Supplement.) The plaintiffs further argue that the dormer change will not increase the floor area of the house, nor create any additional rooms. (ROR, Count One, Item I(f): Plaintiff's Position Paper, p. 4.)
"Enlargement of a building or structure which is nonconforming, or which houses a nonconforming use, is regarded by most courts as an extension or enlargement of use which is proscribed by regulations against extension or enlargement of nonconforming uses. . . . Unlawful extension of use has been detected where [the] enlargement of a nonconforming [use] would increase the amount of intensity of the violation, and where the enlargement would offend specific restrictions on enlargement of nonconforming buildings." (Emphasis in original; internal quotation marks omitted.) Mucci v. Shelton Zoning Board ofAppeals, Superior Court, judicial district of Ansonia/Milford at Derby, Docket No. 050591 (April 19, 1996, Sylvester, J.,16 Conn. L. Rptr. 503), citing 1 R. Anderson, American Law of Zoning (3d Ed.) § 6.46, pp. 584-85. "The general rule is that the owner of a nonconformity can continue any use, and the use of any structure, that was established prior to the adoption of a restricting regulation, but neither use nor structure may be changed." Mucci v. Shelton Zoning Board of Appeals, supra, citing T. Tondro, Connecticut Land Use Regulation, (2d Ed. 1992), pp. 158-59. Unlike the present case, the plaintiff in Mucci sought to place a structure where none existed previously, asking for a certificate of zoning compliance for a proposed enclosure of an existing outdoor patio with a roof and glass walls.
The Connecticut Supreme Court has enunciated a three-prong, fact-specific test for determining whether a nonconforming use has been impermissibly enlarged: "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Bauer v. Waste Management ofConnecticut, 234 Conn. 221, 236-37, 662 A.2d 1179 (1995), citingZachs v. Zoning Board of Appeals, supra, 218 Conn. 332. Yet, these factors are only helpful when determining whether an "activity" or "use" has been "enlarged", versus determining whether a nonconforming building or structure has been enlarged. See Mucci v. Shelton Zoning Board of Appeals, supra. As in Mucci, CT Page 9624 the present case calls for the court to determine whether an enlargement of a nonconforming building or structure, rather than enlargement of a use or activity, is permissible under the Town's zoning regulations. See also Jobert v. Morant, 150 Conn. 584,192 A.2d 553 (1963) (where the court held that the trial court was correct in concluding that enclosing a patio was an unauthorized extension of a nonconforming use under the applicable zoning regulations).
Accordingly, to determine whether the defendant acted illegally, arbitrarily and in abuse of its discretion when it denied the plaintiffs' appeal, implicitly finding that the plaintiffs' proposed renovation to the dormer constitutes an enlargement of a nonconforming use in violation of the Town's zoning regulations, the court must review the Town's applicable zoning regulations. The pertinent regulations are: § 8, setting forth the intent of the zoning regulations regarding nonconforming uses; § 8.1.1, defining nonconformity; § 8.8, governing improvement to a nonconforming structure; and § 8.8.1, governing enlargements of a nonconforming structure.[5] The regulations do not specify whether an enlargement includes either or both a vertical or horizontal extension of a nonconforming use.
The zoning authority's action is arbitrary and illegal if the regulation in question is construed beyond the fair import of its language. Double I Limited Partnership v. Planning ZoningCommission, 218 Conn. 65, 72. 588 A.2d 624 (1991). The rules of statutory construction apply to the interpretation of local regulations. Id., 73. The court must first look to the language of the regulation for legislative intent; if the language is unclear, the court can look to its purpose. Id.
"It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." (Internal quotation marks omitted.)Connecticut Resource Recovery Authority v. Planning ZoningCommission, 225 Conn. 731, 740, 626 A.2d 705 (1993). A non-conforming use is a "use or structure prohibited by the zoning regulations but . . . [is] permitted because of its existence at the time that the regulations are adopted." Adolphson v. ZoningBoard of Appeals, supra, 205 Conn. 710. "[A] nonconforming use is merely an existing use established prior to zoning regulations the continuance of which is authorized by statute or by the CT Page 9625 zoning regulations. . . . The right to continue nonconforming uses is protected by statute. [General Statutes] § 8-2
provides in part that zoning `regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations.' Nonconforming uses are protected by statute even though there is no exemption or provisions for them in the zoning regulations." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) 52.2.
The plaintiffs do not propose to substantially add to or change the character of the existing nonconforming structure by changing the shape of the existing dormer. The plaintiffs are not proposing to build a structure where none existed previously. Rather, the purpose of the proposed change is to increase the ceiling height in one portion of an already existent room. The proposed change constitutes an "intensification" of the nonconforming use rather than an unlawful expansion of that use. Furthermore, the plaintiffs do not propose to change the use made of the property in any way, adding credence to the argument that the proposed change represents a mere intensification of a current use, rather than an unlawful expansion of a nonconforming use. "Not every intensification of a nonconforming use constitutes an impermissible extension of such use." Planning andZoning Commission v. Craft, supra, 12 Conn. App. 90, 96,529 A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987) (change from property owner's part-time, year-round use of a house to full-time, year-round occupancy of a house constitutes lawful intensification of a nonconforming use).
The plaintiffs' appeal from the defendant's denial of their appeal from the ZEO's adverse decision should be sustained. The plaintiffs do not propose to change the current use of the room in their home, nor do they propose to extend the nonconformity of their home in any meaningful way. Thus, the proposed renovation more closely resembles an intensification of a currently existing nonconforming use than it does an unlawful extension of a nonconforming use.
Accordingly, by sustaining the plaintiffs' appeal on the foregoing ground, the court need not reach the issue concerning the ZBA's decision about the plaintiffs' application for a variance, since the plaintiffs' proposed renovation does not represent an unlawful extension or expansion of a nonconforming use. CT Page 9626
CONCLUSION
For the reasons set forth above, the court sustains the plaintiffs' appeal from the defendant's adverse decision. Accordingly, the ZBA's decision upholding the ZEO's refusal to issue a certificate of zoning compliance is overturned.
D. Michael Hurley Judge Trial Referee