[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal brought under the provisions of General Statutes § 8-8 from a decision of the Zoning Board of Appeals of the Town of Old Lyme (hereinafter the Board) denying plaintiffs' appeal from a decision of the zoning enforcement officer of the town of Old lyme (hereinafter the ZEO).
For reasons hereinafter stated, the decision appealed from is affirmed.
General Statutes § 8-8 limits appeals from the decision of local zoning boards of appeals to parties who are aggrieved by a decision of the Board. Here the evidence establishes that the plaintiffs, Warner Smith and Cynthia Smith, are the owners of the property in question and instituted the proceedings before the Board. It is, therefore, found that they are aggrieved within the meaning of § 8-8 and have standing to prosecute this appeal. Rogers v. Zoning Board of Appeals, 154 Conn. 484,488 (1967). All notices required by law have been properly given and timely published. No questions concerning the jurisdiction have been raised.
From the record it is found that plaintiffs acquired the property in question being lot 17-1 Avenue A, Old Lyme, Connecticut on November 12, 1985. The property consists of a lot 44 feet in width and 231 feet in length bounded on the south by the waters of Long Island Sound. A two-bedroom dwelling house is located on the property which is in an R-10 district under the zoning regulations of the town of Old Lyme.
By application filed March 23, 1999, plaintiffs applied to the ZEO for permission to convert a seasonal use dwelling to a year round dwelling for the property at 17-1 Avenue A. In their application they proposed to winterize the dwelling for year round use with no change in the building foot print or any other dimension. Section 9.1 of the Zoning Regulations defines a seasonal dwelling as "a dwelling unit designed, used or intended to be for seasonal use." Seasonal use is defined as "the use of a building or structure for dwelling purposes between April 1 and November 15 only." Section 2.1 of the Zoning Regulations provides that within the town of Old Lyme no land or building shall be used or changed in use except in conformity with the regulations. CT Page 1328
The Old Lyme Zoning Regulations are permissive in character. The uses which are permitted in each zone are spelled out. Any use that is not permitted is automatically excluded. Gordon v. Zoning Board of Appeals,145 Conn. 597, 604 (1958).
The conversion of seasonal use dwellings to year round use dwellings is covered by § 21.2.5 of the Zoning Regulations. This section provides that no dwelling located in the town of Old lyme which on the effective date of the regulations, January 5, 1995, is a seasonal use dwelling may be converted to a year round dwelling unless an application for such conversion has been approved by the zoning enforcement officer and other town officials. The requirements for such change are set forth in subparagraph c of the section. This subsection contains a requirement that the certificate of compliance may be issued only upon full compliance with the zoning regulations. On May 12, 1999, the ZEO denied plaintiffs' application to convert to a year round dwelling for reasons that the property did not conform to. the zoning regulations.
Plaintiffs appealed the ruling of the ZEO to the Zoning Board of Appeals on June 9, 1999. In their appeal, plaintiffs claimed that the ruling of the ZEO should be reversed because "it involves an incorrect interpretation of the town of Old Lyme Zoning Regulations and of the law of the state of Connecticut regarding prior existing nonconforming properties the issue of `conversion' from seasonal to year round use." In their application, plaintiffs went on to specify that "it is the applicants position that year round use at their property is an intensification of the existing use and not a change, extension or expansion of a non-conforming use or structure." A public hearing was held by the Board on September 14, 1999. At a special meeting held September 27, 1999, the Board voted to uphold the decision of the ZEO. This appeal under the provisions of § 8-8 of the General Statutes followed.
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676 (1989). The authority of the court is limited by § 8-8 to a review of the proceedings before the Board. The function of the court in such a review is to determine whether the Board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals,152 Conn. 247, 248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the Board.Burnam v. Planning Zoning Commission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion conferred by the legislature on the Board. The court is limited to granting relief only when it can be shown that the Board acted CT Page 1329 arbitrarily or illegally and consequently has abused its statutory authority. Gordon v. Zoning Board, supra, 145 Conn. 604. The burden rests with the plaintiffs to prove the impropriety of the Board's actions.Burnam, supra, 189 Conn. 266.
It is not the function of the court to rehear the matter or question the wisdom of the defendant Board in taking the action which it did. The court is limited to determining whether or not the Board's action can be supported under the law.
Although the factual and discretionary determinations of the Board must be given considerable weight by the court, it is for the court to expound and apply governing principals of law. Domestic Violence Sevices ofGreater New Haven, Inc. v. FOIC, 47 Conn. App. 466, 470 (1998).
Following an appeal from the action of a zoning enforcement officer to a zoning board of appeals, "a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the Board and the record before the board." Caserta v. Zoning Board of Appeals, 226 Conn. 80, 82
(1993). The board in reviewing the action of the ZEO was "acting administratively in a quasi-judicial capacity in applying the [regulations]." Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 514
(1969).
The Board's authority to hear and decide appeals, where it is alleged that there is an error in a decision made by the ZEO, is derived from General Statutes § 8-6 and § 52.1.1 of the zoning regulations. Although the zoning regulations are silent on the matter, General Statutes § 8-7 requires the Board to state upon the record the reasons for its decision in such appeals. Here, although there was considerable discussion of the facts, the Board failed to specifically state the reasons for its decision on the record. In such situations, the court must search the record to determine whether the decision of the Board is supported by the evidence in the record. Bloom v. Zoning Boardof Appeals, 233 Conn. 198, 209 (1995).
In their presentation before the Board and in their brief, plaintiffs raise two claims. First, it is claimed that the decision of the ZEO effectively deprived plaintiffs of their prior existing nonconforming use status. Secondly, it is claimed that the conversion from seasonal use to year round occupancy was not a change in use but was, in fact, an intensification of a nonconforming use.
In considering plaintiffs' application for conversion from seasonal to year round use, the ZEO determined that plaintiffs met the requirement for lot area required in the R-10 zone. The ZEO found, however, that the CT Page 1330 property did not comply with certain other sections of the zoning regulations. Section 21.3.2 requires a minimum dimension square of 75 feet on the lot. Because of the configuration of plaintiffs' lot, the ZEO determined that the requirements of this section could not be met. Section 21.3.9 requires building setbacks of 12 feet. The building on plaintiffs' property was 6 feet from the sideline and they could not be found in compliance with this regulation. These conclusions do not appear to be in dispute.
Because of these deficiencies, the ZEO concluded that the property could not comply with § 8.8.1 which mentions setback requirements and § 8.9.3 which covers lot shapes. Both of these sections entitled "enlargement" state "these prohibitions specifically include the occupancy of a seasonal use beyond the period of April 1 to November 15 and the winterization, refurbishment or remodeling of a seasonal dwelling to accommodate other than seasonal use."
Plaintiffs' attorney argued before the Board that the LEO misinterpreted the regulations and that §§ 8.8.1 and 8.9.3 should not apply. Although the Board failed to state the reasons for its decision, from the discussion of the members, as contained in the transcript of the minutes, it must be concluded that the Board did riot agree with plaintiffs' argument. Certainly the vote to uphold the action of the LEO indicated support for her interpretation of the Regulations. In determining that §§ 8.8.1 and 8.9.3 were applicable, it cannot be found that the Board acted arbitrarily or illegally. The clear language of the sections indicates the intent expressed in the regulations that for conversion for year round use the property must comply with the requirements set forth in the Regulations. Section 2.1 also indicates a requirement that no use be changed except in conformity with the regulations.
The ruling in no way diminishes the status of the property as a valid preexisting nonconforming seasonal use.
Plaintiffs main argument before the Board and on appeal is that the conversion from seasonal to year round status was not a change in use but the intensification of an existing use. This was clearly spelled out in the appeal petition filed with the Board where plaintiffs state "it is the applicants position that year round use at their property is an intensification of the existing use and not a change, extension or expansion of a nonconforming use or structure."
Where the origin of these proceedings was plaintiffs application for conversion of a seasonal use dwelling to a year round dwelling, both the ZEO and the Board could logically conclude that plaintiffs' beachfront CT Page 1331 property was, in fact, a seasonal use. Plaintiffs do not appear to contest this conclusion but is claimed that because some nonconforming use existed, conversion to full-time use would not be a change in use but merely an intensification of a nonconforming use.
There was evidence of plaintiffs use of their property in the off season. Although the property assessment records for the Old Lyme Tax Assessor's Office indicate that the building was without heat there was evidence that a propane gas wall heater existed in the home since plaintiffs acquired it. A comment at the public hearing indicated that this was not unusual for properties limited to seasonal use. An oil heating system which would allow year round use was not installed, however, until 1997 or 1998. Plaintiffs began to occupy the property on a year round basis at about the same time. This was well after § 21.2.5 became effective in 1995. There is also evidence in the record that from the time they acquired the property in 1985, plaintiffs visited it throughout the year. A photograph of the property with snow on the ground was placed in evidence before the Board. There was no evidence in the record, however, of the extent of this claimed off season use.
On August 4, 1997, the ZEO designated the plaintiffs' property as a seasonal use property and recorded this designation in the land records. Plaintiff did not contest or appeal this designation as they were allowed to do under the regulations.
In their argument, based upon a claim of intensification of a nonconforming use, plaintiffs rely to a large extent Planning ZoningCommission v. Craft, 12 Conn. App. 90 (1987). Reliance on Craft, however, is misplaced. In that case, the Planning Commission was seeking an injunction to enforce a cease and desist order. In the case at bar, we have an application to convert what is admitted by the applicant to be a seasonal use to a year round use. In Craft, there was specific evidence of year round use prior to the enactment of the zoning regulations. There was evidence that the dwelling was insulated and heated at that time. Based upon the evidence, the trial court found that Craft had a valid nonconforming use. The Appellate Court determined that Craft's part-time year round use was unmeasured in scope and extended over the calendar year to weekends, holidays and vacation whenever Ms. Craft could get away from her work. Id., 97.
Before concluding that Craft's year round use of her property was a not an extension of a nonconforming use but at the most an "unmeasurable intensification of an unmeasured nonconforming use." Id., 98. The court stated the general law on the subject.
"Not every intensification of a nonconforming use constitutes an CT Page 1332 impermissible extension of such use. While it is true that mere intensification of a nonconforming use is permissible so long as the nature of use is not substantially changed, it is generally recognized that the right of a landowner to continue the same kind of use to which the property was devoted on the critical date does not confer on him a right to subsequently change or add to that use a new and different one amounting to drastic enlargement or extension of the prior existing use. The issue of whether the new use or structure is a prohibited extension of the established nonconformity, or simply an intensification of that established use or structure, has involved the court in a series of highly factual, individualized decisions. To be illegal, an extension of a permitted use need not necessarily consist of additional uses of a different character. It may consist of uses of the same character carried on over a substantially additional period of the year. The legality of an extension of a nonconforming use is essentially a question of fact." (Citations omitted; internal quotation marks omitted.) Id., 96.
The facts presented to the court in Craft were quite different from the facts placed before the Board in this case.
In upholding the trial court in Planning Zoning Commission v. Craft, the appellate Court felt it necessary to distinguish its decision from that reached by the Supreme Court in Cummings v. Tripp, 204 Conn. 67
(1987); Weyls v. Zoning Board of Appeals, 161 Conn. 516 (1971) andBeerwort v. Zoning Board of Appeals, 144 Conn. 731 (1985). In all three of these cases, the court held that the extension of a seasonal nonconforming use to year round use constituted an illegal extension of a nonconforming use. Citing the Beerwort case as authority in Weyls v.Zoning Board of Appeals, supra, 161 Conn. 520, the court stated the language found in Craft that "to be illegal an extension of a permitted use need not necessarily consist of additional uses of a different character. It may consist of uses of the same character carried on over a substantially additional period of a year." Cummings v. Tripp, supra,204 Conn. 85. After reviewing Cummings, Weyls and Beerwort it must be concluded that these cases contained the general rules which are applicable to situations where a seasonal use is being extended into a year round use. In Planning Zoning Commission v. Craft, the Appellate Court carved out an exception to the rule found in the above cases based upon the facts existing in that case. As previously noted, the record here showing plaintiffs' use of their property is quite different from that placed before the court in the Craft case. For this reason, it must be concluded that plaintiffs have failed to prove that in upholding the decision of the ZEO, the Board acted arbitrarily or illegally and consequently abused its statutory authority.
Accordingly, judgment is rendered sustaining the decision of the ZBA CT Page 1333 appealed from.
Joseph J. Purtill, Judge Trial Referee